# BRADSHAW *v.* ASHLEY.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 60. Argued November 1, 1900.—Decided January 14, 1901.

When, in an action of ejectment, the plaintiff proves that on a day named he was in the actual, undisturbed and quiet possession of the premises, and the defendant thereupon entered and ousted him, the plaintiff has proved a *prima facie* case, the presumption of title arises from the possession, and, unless the defendant prove a better title, he must himself be ousted.

Although the defendant proves that some third person, with whom he in no manner connects himself, has title, this does him no good, because the prior possession of the plaintiff is sufficient to authorize him to maintain the action against a trespasser; and the defendant being himself without title, and not connecting himself with any title, cannot justify an ouster of the plaintiff.

In *Sabariego* v. *Maverick*, 124 U. S. 261, the latest case in this court on the subject, the rule is stated to be that a person who is in possession of premises under color of right, which possession had been continuous and not abandoned, gave thereby sufficient proof of title as against an intruder or wrongdoer, who entered without right.

That case expresses the true rule prevailing in the District of Columbia, as well as elsewhere.

THE case is stated in the opinion of the court.

*Mr. William F. Mattingly* and *Mr. John Ridout* for the plaintiff in error. *Mr. William John Miller* was on their brief.

*Mr. J. J. Darlington* and *Mr. A. S. Worthington* for defendants in error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The defendant in error, the plaintiff below, brought this action of ejectment in the Supreme Court of the District of Columbia to recover from the defendant the possession of one undivided fifth part of certain lots in the city of Washington,

in square 939, sometimes described as lots 1, 2 and 3 in that square, and sometimes as lots 4, 5 and 6; and he also sued to recover an undivided fourth part of another lot in the same square, sometimes designated as lot 20 and sometimes as lot 3. Entry and ouster were alleged to have taken place on March 22, 1889, and in another count on November 28, 1890. There were proper counts also for the recovery of mesne profits. The defendant pleaded not guilty. There was a verdict for the plaintiff for the possession of the property and for one cent damages. The defendant appealed to the Court of Appeals of the District, where the judgment was affirmed, and he comes here by writ of error.

On the trial the plaintiff endeavored to prove a record title to the lots, through various mesne conveyances from the original owners, and for that purpose gave evidence, under the objection of defendant, tending to explain the appearance of two sets of numbers on the map of square 939, on file in a public office of the District, one set being in ink and one set in pencil, and he claimed that the pencil were the correct numbers, in which case he contended his record title in fee was perfect. He also gave evidence tending to show a title by adverse possession for twenty years.

The defendant controverted these claims, but at the time he rested his case there was not the slightest evidence which tended to show title in himself or to connect himself in any way with the title. He put in evidence some deeds executed by certain individuals residing in England, which recited that they (the grantors) were some of the heirs at law of George Walker, who was the original owner of the square, but there was no evidence of the truth of those recitals, nor was any attempt made to show that these grantors were heirs of Walker, or that they had any title to the lots which the deeds purported to cover. The deeds seem to have been offered in evidence upon the theory that the defendant by that means showed that he was not a mere trespasser or intruder, but came in under a claim of title, although it was not shown to have the least validity. Some other deeds of like nature were also put in evidence.

At the close of the case the evidence showed that the defendant was a simple trespasser without the color of title, and the counsel for the plaintiff, not insisting upon the proof regarding his record title or upon an adverse possession for twenty years, thereupon based his case upon the claim that he had proved that at the time when the defendant intruded upon and ousted him he had been, by himself or his grantors, for a number of years in the actual, continuous and undisturbed possession of the lots, claiming to own under deeds purporting to cover them, and that he was, therefore, entitled to recover as against the defendant, who was a mere intruder, without further proof of title.

The court was, therefore, requested by the plaintiff to charge the jury that if it found from the evidence that the plaintiff and his grantors had been thus in possession, when he was ousted by the defendant, himself being without title, the plaintiff was entitled to recover. The court charged as requested, the defendant excepted, and the jury found in accordance with the plaintiff's claim. This course eliminated all questions regarding a valid record title or a title by adverse possession for twenty years, and so all questions of admissibility or sufficiency of evidence to prove either of those claims drop out of the case, and we have to deal with the simple proposition of the correctness of the charge.

The defendant urges here that the charge was erroneous because it ignored and ran counter to the rule in ejectment, that the plaintiff must recover upon the strength of his own title and not upon the weakness of that of the defendant; that the mere fact of prior possession of the premises by the plaintiff without evidence of any legal title to them was not sufficient to allow a recovery as against the defendant in possession, even though the defendant had no title himself and did not connect himself with the legal title. He claims that whatever it may be in other jurisdictions, the rule as charged by the court does not obtain in the District of Columbia, and that in this District the plaintiff is always bound to prove a good and valid title as against a defendant in possession, by some other evidence than prior possession. He also contends that if the rule be otherwise, yet in this case there is not sufficient evidence that the

plaintiff had such possession of the lots at the time the defendant entered as to enable him to base a claim to the benefit of the rule or to authorize a recovery in this action.

The evidence is that when defendant entered upon them they were unimproved and vacant city lots. It is undisputed that the plaintiff and his grantors claimed title to them by virtue of conveyances, which they contended came from the original owners, and plaintiff and his predecessors, under such deeds, had exercised usual acts of ownership and possession natural in the case of a city lot which was vacant and unimproved. The lots had not been fenced, but the evidence showed there had been a building on one of them, and after its sale to Ashley, the plaintiff's decedent, the house had been removed by Ashley's permission, and rent had been paid for it to him while it remained on the lot. It also appeared that for quite a long time the plaintiff and his grantors had rented, and collected the rent of the other lots for pasturing cattle thereon; they had authorized others to take sod therefrom, and pursuant to such authority sod had been taken from these lots by other persons, and although this had ceased about 1886, and the defendant did not enter until 1889 or 1890, yet the possession of the plaintiff was not in the mean time in any manner disturbed or interfered with, but continued as it had been, up to defendant's entry; taxes had been paid by him or his predecessors upon the lots, and in brief it appears that all that the nature of the case admitted in order to show actual and continuous possession and claim and acts of ownership had been proved and claimed in regard to the property by the plaintiff. Although the tenancy may have ceased and the sale of the sod concluded some time before defendant entered, yet the plaintiff had remained in the constructive possession, claiming full ownership of the premises, even since the tenancy, and up to the time of defendant's entry. There was an utter absence of any evidence of abandonment.

The contention of the defendant practically is that in ejectment there can be no possession within the rule referred to, of a vacant and unimproved city lot, unless it is at least surrounded by a fence sufficient to warn off trespassers or intruders; that if the lot be vacant, unimproved and unfenced, no matter what

acts of ownership have been exercised over the lots for a long time by the person claiming to own it, the trespasser or intruder may nevertheless enter upon the land, and cannot be ousted without strict proof that the plaintiff has a good and valid title to the lot aside from any claim of prior possession. We do not assent to this contention.

We think the plaintiff in this case proved enough to submit to the jury the question of possession, and enough if believed, to entitle him to recover as against the defendant, who gave no evidence of any title in himself nor in any one under whom he claimed, and who was, so far as the evidence disclosed, a mere trespasser upon the lots claimed by the plaintiff.

An examination of the authorities will, as we think, render it clear that the rule in regard to possession and the presumption arising therefrom was correctly stated, and it will appear that it is not inconsistent with the acknowledged rule in ejectment that the plaintiff must recover upon the strength of his own title and not upon the weakness of the title of the defendant. The question is what presumption arises from the fact of possession of real property? Generally speaking, the presumption is that the person in possession is the owner in fee. If there be no evidence to the contrary, proof of possession, at least under a color of right, is sufficient proof of title. Therefore, when in an action of ejectment the plaintiff proves that on the day named he was in the actual, undisturbed and quiet possession of the premises, and the defendant thereupon entered and ousted him, the plaintiff has proved a *prima facie* case, the presumption of title arises from the possession, and unless the defendant prove a better title, he must himself be ousted. Although he proves that some third person, with whom he in no manner connects himself, has title, this does him no good, because the prior possession of the plaintiff was sufficient to authorize him to maintain it as against a trespasser, and the defendant being himself without title, and not connecting himself with any title cannot justify an ouster of the plaintiff. This is only an explanation of the principle that the plaintiff recovers upon the strength of his own title. His title by possession is sufficient, and it is a title, so far as regards a defendant who only got into possession by a pure tort, a

simple act of intrusion or trespass, with no color or pretense of title.

The latest case in this court upon the subject is that of *Sabariego* v. *Maverick*, 124 U. S. 261. It was there stated that the rule was that a person who was in possession of the premises under color of right, which possession had been continuous and not abandoned, gave thereby sufficient proof of title as against an intruder or wrongdoer who entered without right. Mr. Justice Matthews, in delivering the opinion of the court, said (at page 297): ·

"This rule is founded upon the presumption that every possession peaceably acquired is lawful, and is sustained by the policy of protecting the public peace against violence and disorder. But, as it is intended to prevent and redress trespasses and wrongs, it is limited to cases where the defendants are trespassers and wrongdoers. It is, therefore, qualified in its application by the circumstances which constitute the origin of the adverse possession, and the character of the claim on which it is defended. It does not extend to cases where the defendant has acquired the possession peaceably and in good faith, under color of title. *Lessee of Fowler* v. *Whitman*, 2 Ohio St. 270; *Drew* v. *Swift*, 46 N. Y. 204. And in the language of the Supreme Court of Texas in *Wilson* v. *Palmer*, 18 Texas, 592, 595, 'The evidence must show a continuous possession, or at least that it was not abandoned, to entitle a plaintiff to recover merely by virtue of such possession.' That is to say, the defendant's possession is in the first instance presumed to be rightful. To overcome that presumption the plaintiff, showing no better right by a title regularly deduced, is bound to prove that, being himself in prior possession, he was deprived of it by a wrongful intrusion by the defendant, whose possession, therefore, originated in a trespass. This implies that the prior possession relied on by the plaintiff must have continued until it was lost through the wrongful act of the defendant in dispossessing him. If the plaintiff cannot show an actual possession, and a wrongful dispossession by the defendant, but claims a constructive possession, he must still show the facts amounting to such constructive possession. If the lands, when entered upon

by the defendant, were apparently vacant and actually unoccupied, and the plaintiff merely proves an antecedent possession, at some prior time, he must go further and show that his actual possession was not abandoned; otherwise he cannot be said to have had even a constructive possession."

Many of the leading cases on the subject are referred to in the opinion of the court in the above case, and it is unnecessary to cite them here. They show that the rule has been recognized by nearly all those jurisdictions which acknowledge the common law, and that it is indeed one of the fundamental rules applicable to the action of ejectment, and it does not interfere with or overrule the other principle also applicable to that action, that a plaintiff is bound to recover on the strength of his own title, and not upon the weakness of that of his adversary. The rule is intended to prevent and redress trespasses and wrongs, and it is limited to cases where the defendants are trespassers and wrongdoers; it is, therefore, qualified in its application by the circumstances which constitute the origin of the adverse possession, and it does not extend to cases where the defendant has acquired possession peaceably and in good faith under color of title.

It would seem to be under this limitation of the rule that the defendant proved he had deeds from individuals who asserted they were some of the heirs at law of Walker, the original owner, but this clearly was not enough to show the entry was in good faith and under color of title. Otherwise, a party might wrongfully intrude and enter upon the possession of another, as a pure intruder, and yet make a claim of title under a deed which manifestly conveyed none, and which the party could not in good faith have supposed conveyed title, and then call upon plaintiff for full proof of title in fee. Such entry could not be excused by any subterfuge of that kind. Mr. Justice Matthews in the foregoing case, in speaking of a defendant acquiring possession peaceably and in good faith, under color of title, cited among others the case of *Drew* v. *Swift*, 46 N. Y. 204. In that case the plaintiff relied upon a prior possession of the disputed land and gave no proof of a conveyance from the original proprietor, nor of any paper title, and he recovered

upon the strength of such possession alone. This judgment was reversed in the Court of Appeals on the ground that the deed from a former owner, under which the defendant entered, included the premises in controversy, and the title to the *locus in quo* was, therefore, in the defendant, and he was entitled to a verdict and to retain the lands as within the boundaries of his grant; that the defendant was not a trespasser, but went into possession having title, and the plaintiff was not, therefore, entitled to recover upon proof of any prior possession other than an adverse possession for a period which would bar an entry, and no such possession was shown. The court held that the defendant was entitled to a judgment on the merits. In that case, as will be seen, the presumption of title arising from the prior possession by the plaintiff was overcome, and the defendant proved title in himself by virtue of the deed under which he entered. But the rule applies where there is on the side of the defendant an absence of proof showing any color of title in him, and in such case, where the plaintiff proves prior and peaceable possession under a claim and color of title, an entry and ouster by the defendant, without a pretence of title, will not be upheld, even though the defendant seeks to justify his entrance by proof of a deed from some one who had no title to the premises, and this is so although at the time of such entry the lands were apparently vacant and actually unoccupied. 124 U. S. *supra*, 298.

In *Jackson* v. *Denn*, 5 Cowen, 200, the premises were actually vacant and unoccupied at the time of the entry by the defendant, who entered without color of title, but it was shown that the plaintiff had leased the land to a tenant who had left the premises without informing the landlord, who did not know of it until after the defendant entered. " This shows," said the court, " that the possession had never been abandoned by the lessors, without the *animus revertendi.*" Prior possession, although the land was at the time of defendant's entry actually unoccupied, was also said in *Whitney* v. *Wright*, 15 Wend. 171, to be sufficient to enable the plaintiff to recover as against a mere intruder, where the prior possession of the plaintiff had not been voluntarily relinquished without the *animus revertendi.*

In *Smith* v. *Lorillard*, 10 Johns. 338, cited in *Sabariego* v. *Maverick, supra*, the plaintiff had been in the possession of the premises for many years until he was expelled by the British in 1776, and in 1795 the defendant entered upon the premises, which were then vacant, and continued to live there for some years. An action of ejectment was brought by the plaintiff, and it was held by the Supreme Court, Kent, Ch. J., delivering the opinion, that his prior possession was *prima facie* evidence of right, and it was not necessary that he should show either a possession of twenty years or a paper title so long as the subsequent possession of the defendant was acquired by mere entry without any lawful right.

The case of *Greenleaf* v. *Brooklyn, Flatbush &c. Railway Company*, cited by defendant, 141 N. Y. 395, reported on previous appeal in 132 N. Y. 408, is not opposed to these views upon the question of occupancy. The case shows that the plaintiff never was in possession of the land, actually or constructively, never exercised the slightest act of ownership over it, nor were his grantors ever in possession or occupancy thereof, nor did they exercise any act of ownership over the land except when they assumed to convey it to others. In the report in 132 N. Y. the court stated that the land in question was on the beach, incapable of being enclosed with fences or occupied like ordinary agricultural lands, but at the same time there was no evidence that the land had ever been occupied by plaintiff or his grantors for any purpose whatever, and it did not even appear that grass or sand had been taken from the land, or that it had been used as a means to approach the ocean for fishing or for any other purpose. It was simply the case of a conveyance by deed of land which the grantor had no title to and never occupied or possessed, the only claim of ownership being the execution of a deed assuming to convey the premises and on some occasions an oral statement of ownership. Clearly all this was wholly insufficient to show possession within the rule and the case is entirely unlike the one at bar.

Nor is it material that the plaintiff, in addition to proof of prior possession, also gave proof of a record title, which defendant claims is not valid. He is still entitled to recover on

proof of his prior possession where the defendant is simply an intruder and has no color of title. As was said by Pollock, Chief Baron, in *Davison* v. *Gent*, 38 E. L. & Eq. 469, if a party has a right to maintain an action of ejectment, by reason of his possession, and attempts also to show title and discloses a flaw in it, he may still recover by reason of his possession. He may say, " I claim to recover both by reason of my title and my possession; and failing in one I will rely upon the other." His prior possession is good in any event as against a trespasser entering without right. Bramwell and Watson, BB., were of the same opinion. See also *Asher* v. *Whitlock*, L. R. 1 Q. B. 1, 5, opinion by Cockburn, Ch. J., and concurred in by Mellor and Lush, JJ.; decided in 1865.

Notwithstanding the authorities above referred to, the defendant claims that the law is different in this District, because he says, the law was different in Maryland at the time of the cession of the District to the United States, and that the law of Maryland as it was then governs this case. 2 Stat. 103, c. 15, sec. 1. Counsel makes this claim because the land originally formed part of the State of Maryland, and we must look to the law of the State in which the land is situated for the rules which govern the descent, alienation and transfer of property, and the effect and construction of wills and other conveyances. *De Vaughn* v. *Hutchinson*, 165 U. S. 566, 570. Upon this foundation counsel for the plaintiff in error seeks to show that the law of Maryland was, when this District was ceded by it to the United States, opposed to the rule enunciated by the trial court, and as evidence of what the law of Maryland was at that time he cites the case of *Mitchell* v. *Mitchell*, decided in 1851, and reported in 1 Maryland, 44. The case actually decided did not involve this question. According to the facts stated in the report, Francis J. Mitchell obtained possession of the premises in 1817, and held the same until the time of his death in 1825. Immediately after his death, his son, James D. Mitchell, his devisee, entered upon and possessed the land until his death in 1837. Immediately after his death, his widow Elizabeth, as devisee for life under his will, entered and possessed the land until her death in 1841. The plaintiff's lessor was the

sole sister of the whole blood of James D. Mitchell and his heir at law. The possession of the premises from 1817 to 1841, the time of the death of Elizabeth, was continuous, peaceable, exclusive, uninterrupted and adverse to all persons. The defendant was half brother of James D. Mitchell, and upon the death of Elizabeth entered on the land, declaring that it was his son's property, and that no other brother or sister survived the said James D. Mitchell. The verdict was for the defendant. The plaintiff was never personally in possession of the premises, but was simply claiming under James D. Mitchell as his heir at law. The defendant was in possession at the time the plaintiff commenced his suit, holding for his son under a claim that his son was the heir at law of James D. Mitchell. He was not a mere trespasser or intruder within the meaning of the rule, but took possession on the death of the life tenant, ousting no one, and claiming title for his son as heir at law. The question then became one of superiority of title as between the two claimants, the defendant being in possession.

Upon these facts it would seem that in other States which follow the common law the plaintiff would have been entitled to recover on proof that he was the sole heir at law of James D. Mitchell, the latter having been devisee of Francis J. Mitchell, and their possession, together with that of the widow of James D. Mitchell, as his devisee, having been continuous, peaceable, exclusive, uninterrupted and adverse to all persons from 1817 to 1841, when Elizabeth died and the defendant took possession. But the court held that in Maryland a plaintiff in ejectment was bound to recover, not only on the strength of his own title, but must show that he had a legal title to the land and a right of possession, and that he could not establish legal title in himself without first showing the land had been granted by the State. The case decides that upon a question of a conflict of title, the plaintiff must prove that the State had at some time granted the land. It was not a case of prior peaceable possession, interfered with by the defendant without pretense or color of title and simply as a mere trespasser or intruder.

The cases of *Hall* v. *Gittings*, 2 H. & J. 112, decided in 1807;

*Cockey's Lessee*. v. *Smith*, 3 H. & J. 20, 26, decided in 1810; and *Wilson's Lessee* v. *Inloes*, 11 G. & J. 351, 358, decided in 1840, are cited by the court, and justify the statement that there seems to be a particular rule in Maryland, by which it is necessary in actions of ejectment, where there is a real contest as to title, to show either a grant from the Lord Proprietary, or the State as successor, or else very strong facts and circumstances, as secondary evidence upon which to presume a grant, as mentioned in *Cockey's Lessee* v. *Smith,* *supra.*   None of the cases presents the phase of a mere trespasser, intruding without color of title, upon the possession of the plaintiff and ousting him by a plain tort.   It will be observed they were all decided since the cession.   A Declaration of Rights preceded the first constitution of Maryland, and was affirmed by it.   1 Kilty's Laws of Maryland, sec. 3, Declaration of Rights.   It was therein provided that the people of that State were entitled to the common law of England.   The decisions of the courts of Maryland prior to the cession might be regarded as authority for what the common law then was in that State, but those made after the cession, while entitled to very high respect as the decisions of a State court, are not to be regarded as authority for what the common law was prior to 1801.   That question was not involved in those cases.

There are, however, some cases in that State arising before the cession, in actions of ejectment, where possession alone seems to have been regarded as sufficient to maintain the action as against an intruder.   They are *Hutchins' Lessee* v. *Erickson*, 1 H. & McH. 339, and *House's Lessee* v. *Beatty*, 3 H. & McH. 182. There was no opinion delivered in either case, (and those reports contain but few opinions in any of the decided cases,) but the facts stated in the first show that prior possession was relied on as against an intruder, by counsel, who referred to the very case of *Allen* v. *Rivington*, 2 Saund. 111, which was cited to maintain the same proposition by Kent, Ch. J., in 10 Johns. *supra,* and by Mr. Justice Matthews in *Sabariego* v. *Maverick, supra.* The case certainly looks in the direction of maintaining the proposition charged by the court in this case.   The facts in the other case do not make it so clear.   Neither is very satisfactory authority, but they certainly do not maintain the proposition of

the plaintiff in error, and we have found no case that does. Upon the whole, we think the almost universal character of the rule laid down by the trial court, taken in connection with the slight evidence in its favor in the two cases arising before the cession, and the absence of cases to the contrary, are enough to show that the rule prevailed in 1801 in Maryland the same as elsewhere.

There are no cases to which our attention has been called involving this question in the District of Columbia, which hold a different doctrine from that laid down herein by the trial court. In a very late case, the opinion in which was written by Mr. Chief Justice Alvey of the Court of Appeals, formerly Chief Justice of Maryland, *Staffan* v. *Zeust*, 10 App. D. C. 260, he made use of the following language:

" The action of ejectment is, strictly speaking, a possessory action, the plaintiff being required to show a present legal right to the possession of the premises as against the defendant. This may be done by evidence to establish the fact of prior possession by the plaintiff, even though that possession be for a time less than twenty years; such possession being sufficient to give rise to the presumption of title as against a defendant who has subsequently acquired possession by mere entry without any lawful right; provided, however, that such prior possession of the plaintiff was not voluntarily relinquished without the *animus revertendi*. *Allen* v. *Rivington*, 2 Saund. 111; *Smith* v. *Lorillard*, 10 Johns. 338, 356; *Christy* v. *Scott*, 14 How. 282, 292; *Sabariego* v. *Maverick*, 124 U. S. 296, 300."

Although this exact question was not involved, it shows that the Court of Appeals of the District was not of opinion that the law in regard to ejectment was in any exceptional condition here. The Chief Justice cites the same case in 2 Saund., so frequently cited, to show the rule in this particular.

After a careful consideration of the question we are of opinion that the case of *Sabariego* v. *Maverick*, *supra*, expresses the true rule in this District as well as elsewhere, and therefore the trial court was right in the direction given to the jury, and the judgment of the Court of Appeals, affirming that of the trial court, must be.

*Affirmed.*